# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TRAVIS SANTELL LONGMIRE,

      Petitioner,

v.

MARK MCCULLICK,

      Respondent.

_____/

Civil Action No.
2:17-CV-10148

HONORABLE MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, DENYING THE MOTIONS FOR SUMMARY JUDGMENT AND THE NOTICE RE: WARNING PERSISTENT FAILURE TO PERFORM JUDICIAL DUTIES, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Travis Santell Longmire, ("Petitioner"), confined at the Alger Correctional Facility in Munising, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his convictions for armed robbery, MCL § 750.529, felon in possession of a firearm, MCL § 750.224f, and possession of a firearm during the commission of a felony, MCL § 750.227b. The trial court sentenced Petitioner to concurrent prison terms of 15 to 25 years for the armed robbery conviction, and 1 to 5 years for the felon in possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. For the reasons stated below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which

are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), see Wagner v. Smith,

581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arose from the robbery of a Burger King restaurant in Detroit. The prosecution presented the testimony of three of the four Burger King employees who were present at the time of the robbery. According to the testimony, two men, one wearing a striped shirt and one wearing a white t-shirt, entered the restaurant. The man wearing the t-shirt placed an order and gave the shift manager and cashier, RR, a $5 bill. When RR opened the register, the man wearing the striped shirt, later identified as defendant, produced a handgun and pointed it at RR. As RR pleaded with defendant not to shoot, defendant took money from the register. Two other employees, SS and TR, observed defendant from their respective vantage points in the restaurant and, after defendant left the store, SS and TR again observed him in the parking lot. SS and TR each identified defendant at both a live lineup and at trial. The defense theory at trial was that defendant had been misidentified as the robber.[1]

People v. Longmire, No. 312071, 2014 WL 3547133, at *1 (Mich. Ct. App. July 17, 2014).

Petitioner raised the following claims before the Michigan Court of Appeals:

1. Pretrial waiver of counsel was not unequivocal, requiring a new trial.

2. Trial court failed to suppress identification testimony of the eyewitnesses.

Petitioner in his Standard 4 Brief raised the following additional issues:

1. False Confession.

2. Complete failure to allow Petitioner to view such evidence by the trial court.

3. False/fabricated evidence was provided by Ms. Sutton, violating due process rights.

4. Disregarding Ms. Sutton's original description of the culprit was an abuse of discretion.

5. Officer-in-charge provided perjured testimony at and after the Wade hearing.

6. Officer-in-charge provided perjured testimony in connection with material issues.

7. Warrant was based on witness' conclusions rather than probable cause.

---

[1] This Court will follow the Michigan Court of Appeals' use of abbreviations to refer to the victim and witnesses when quoting the Michigan Court of Appeals' opinion but will refer to the witnesses by their full names in the body of this opinion.

8. The People failed to show a substantial basis of credibility of the confidential informant in obtaining a warrant.

9. Failure to conduct the legal proceedings in accordance within the governing rules.

10. No probable cause at the time of the arrest or at the time of the issuance of the warrant.

Petitioner raised the following claims before the Michigan Supreme Court:

1. Pretrial waiver of counsel was not unequivocal.

2. Violation of due process by charges brought on the basis of false evidence.

3. Officer-in-charge falsified a police report and supplied perjured testimony at trial.

4. Lack of probable cause for arrest.

Petitioner's conviction was affirmed on appeal, Id., leave denied 497 Mich. 972, 859 N.W.2d 695 (Mich. 2015).

On May 21, 2015, Petitioner filed a post-conviction motion for relief from judgment, No. 11-011861-01-FC (Dkt. 8-18), containing the following claims:

1. A Brady violation: that prosecution withheld witness statement of the identifying witness, see Brady v. Maryland, 373 U.S. 83 (1963);

2. Newly discovered evidence that Petitioner's arrest was illegal and that the evidence came from the fruit of the poisonous tree;

3. A jurisdictional defect: that Petitioner was arraigned on baseless charges with no probable cause

4. Deprivation of self-representation.

The trial court denied this motion. People v. Longmire, No. 11-011861-01-FC (Wayne Cty. Cir. Ct. Aug. 21, 2015) (Dkt. 8-19). The Michigan appellate courts then denied Petitioner leave to appeal from this motion. People v. Longmire, No. 331397 (Mich. Ct. App. June 2, 2016) (Dkt. 8-21); leave denied 500 Mich. 899, 887 N.W.2d 425 (2016).

Petitioner seeks habeas relief on the following grounds:

1. Petitioner was denied due process by improper "fabricated identification procedures."

2. Petitioner was improperly denied his right to self-representation.

3. New evidence shows a Fourth Amendment violation with Petitioner's arrest.

4. Petitioner was denied the effective assistance of counsel.

5. Petitioner's sentence is invalid.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Harrington, 562 U.S. at 102. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

## III.    Discussion

### A.   Denial of due process due to fabricated-identifications procedures.

Petitioner challenges the pre-trial and in-court identifications of several witnesses on several grounds. He contends that Ms. Shanavia Sutton did not witness a larceny from her person, and states that she only saw the criminal offense after watching a video. Sutton testified that around 7:00 p.m., she saw a man with a striped shirt that looked like he was about to order but just backed out (Dkt. 8-11, PageID.767). When shown a video, she identified Petitioner as the man with a striped shirt fleeing from the Burger King at approximately 8:30 p.m. Petitioner also challenges the identification given by Rashida Richardson approximately three months after the charges. Petitioner submits that the identification provided by Shanavia Sutton and Tiffany Reed

did not support any of the elements of the underlying offense of armed robbery, claims that charges should not have been brought, and claims that he is entitled to a Wade hearing to challenge the validity of the identification process, see United States v. Wade, 388 U.S. 218 (1967).

Due process protects the accused against the introduction of evidence resulting from an unreliable identification obtained through unnecessarily suggestive procedures. Moore v. Illinois, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. Kado v. Adams, 971 F. Supp. 1143, 1147-1148 (E.D. Mich. 1997) (citing Neil v. Biggers, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

1. The witness's opportunity to view the criminal at the time of the crime;

2. The witness's degree of attention at the time of the crime;

3. The accuracy of the witness's prior description of the defendant;

4. The witness's level of certainty when identifying the suspect at the confrontation; and,

5. The length of time that has elapsed between the time and the confrontation.

Neil v. Biggers, 409 U.S. at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. See United States v. Wade, 388 U.S. 218, 240, n.31 (1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due

process violation has occurred. Absent a substantial likelihood of misidentification, the jury must determine the ultimate weight to be given to the identification. See United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner's primary claim is that there were "fabricated identification procedures" regarding Sutton's and Reed's identification of Petitioner as the robber of the Burger King. Petitioner claims that their identifications are invalid and should have been excluded because neither of the witnesses saw him with a gun, nor saw him trying to take any cash. Petitioner argues that they could not be witnesses against him, because they did not see him violate every element of the armed robbery statute.

Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. Johnson v. Coyle, 200 F.3d 987, 992 (6th Cir. 2000). Identity of a defendant can be inferred through circumstantial evidence. See Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Both Reed and Sutton saw Petitioner at the Burger King, and Sutton saw him at the counter just before he robbed it. The two witnesses' testimony placed him inside the Burger King and at the counter just before the robbery. Petitioner was wearing the clothing the primary robbery victim said he was wearing, which the surveillance video also shows. This circumstantial evidence establishes Petitioner's identity as the robber. Petitioner cites no clearly established United States Supreme Court precedent that would invalidate a witness's testimony simply because a witness only saw some of what transpired during a crime.

Given the lack of holdings by the Supreme Court on the issue of whether an eyewitness is required to witness an entire criminal incident in order for the identification of the defendant to be reliable, the Michigan courts' rejection of this portion of Petitioner's claim was not an

unreasonable application of clearly established federal law. See Wright v. Van Patten, 552 U.S. 120, 126 (2008); Carey v. Musladin, 549 U.S. 70, 77 (2006).

Petitioner also argues that Sutton's in-court identification was unreliable because she was only able to identify Petitioner as having committed the robbery after viewing photographs from a surveillance camera from the Burger King. Ms. Sutton was shown photographs from the surveillance camera depicting the events and the persons surrounding the robbery of the Burger King and was present at the time of the robbery. "[L]ittle possibility of misidentification arises from the use of photographs depicting the likeness not of some possible suspect in the police files, but of the [persons] who actually committed the [crime]." United States v. Monks, 774 F.2d 945, 957 (9th Cir. 1985) (internal citations and quotation marks omitted). Refreshing a witness's memory with a source that depicts the actual perpetrator of the crime runs "a significantly smaller risk of misidentification than to refresh it from a source unrelated to the actual events." United State v. Evans, 484 F.2d 1178, 1186 (2nd Cir. 1973). In this case, it was not impermissibly suggestive for Ms. Sutton to view the surveillance video depicting Petitioner inside of the Burger King at the time of the robbery. See United States v. Bridgefourth, 538 F.2d 1251, 1253 (6th Cir. 1976); see also United States v. Peterson, 411 F. App'x 857, 865 (6th Cir. 2011) (police officer's inquiry whether eyewitness could identify bank robber from photo array was not unduly suggestive in violation of defendant's due process rights, even if witness viewed photographs of robber in newspaper before identification; photograph of robber in newspaper was taken from bank's security camera during commission of robbery and would have been no different than what witness saw at bank).

Petitioner has failed to show that the identification procedure was unduly suggestive.

Petitioner also challenges Rashida Richardson's identification at trial, stating that she could not identify him in the photo array. An earlier failure to identify a defendant, or even a positive identification of a different suspect, does not require the exclusion of an in-court or pretrial identification, if the identification is otherwise reliable. See Howard v. Bouchard, 405 F.3d 459, 483-484 (6th Cir. 2005) (collecting cases). Petitioner contends that he was entitled to a Wade hearing on Ms. Richardson's identification, but the trial records shows that he had a two-day Wade hearing (Dkts. 8-8, 8-9). Richardson, the Burger King manager, positively identified Petitioner at the preliminary examination testifying, "when I see you up close in person I know it's you" (Dkt. 8-4, PageID.179). Richardson indicated that she could not earlier identify Petitioner in picture form, but had no problem identifying him in court. Id. at 178-179. At trial, Richardson testified that she failed to identify Petitioner in the photo array, "Because that photograph, for one, is in black and white and it just don't look like him. But when I see him and look at him and his face, I know that's who had a gun to my face" (Dkt. 8-11, PageID.743). Richardson's failure to identify petitioner previously went to the weight, not the admissibility, of her in-court identification. Howard, 405 F.3d at 484-85. Moreover, in light of the fact that two additional eyewitnesses identified petitioner as the robber, see Longmire, 2014 WL 3547133, at *4, Richardson's in-court identification was, at most, harmless error. See Keene v. Mitchell, 525 F.3d 461, 466 (6th Cir. 2008).

Petitioner failed to show that the in-court identification by the witnesses was the product of a suggestive pre-trial identification. This Court notes that "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." Cameron v. Birkett, 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry

into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." Perry v. New Hampshire, 565 U.S. 228, 248 (2012). Ms. Sutton, Ms. Reed, and Ms. Richardson were not subjected to a suggestive pre-trial identification; accordingly, their in-court identification of Petitioner does not entitle him to habeas relief.

To the extent that Petitioner claims that the eyewitnesses fabricated their in-court identification of Petitioner as the perpetrator, under federal and Michigan law, credibility of an in-court identification is to be resolved ultimately by the jury after the defendant has had an opportunity to test the accuracy of an identification through cross-examination. Therefore, defense counsel would not have been able to suppress a witness's in-court identification on the ground that any of them committed perjury. See Monroe v. Smith, 197 F. Supp. 2d 753, 760 (E.D. Mich. 2001). Petitioner is not entitled to relief on his first claim.

### B. Denial of the right to self-representation.

Petitioner alleges that he was denied his right to self-representation.

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 154 (2000); Faretta v. California, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. Martinez, 528 U.S. at 161. Moreover, a defendant's request for self-representation must be made clearly and unequivocally. See Faretta, 422 U.S. at 835; see also U.S. v. Martin, 25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally."). Finally, a defendant's invocation of his right of self-representation must be timely made. See, e.g., Moore v. Haviland, 531 F.3d 393, 403 (6th Cir. 2008).

To the extent that Petitioner claims that he was denied his right to self-representation at various pre-trial hearings, his claim is without merit. Petitioner was permitted to represent himself at his preliminary examination (Dkt. 8-4), at his arraignment (Dkt. 8-5), at calendar conference (Dkt. 8-6), at a pre-trial hearing to suppress petitioner's statement (Dkt. 8-7), at a <u>Wade</u> hearing to suppress the witnesses' identifications (Dkt. 8-8, 8-9), and at a subsequent pre-trial motion hearing (Dkt. 8-10). Petitioner was permitted to represent himself at all pre-trial hearings. This claim is without merit.

Petitioner writes, "During the proceedings of Nov. 21, 2011 an unequivocal request for self-representation was made knowingly and intelligently. The lower court refused me this constitutional right and ordered a mental competence hearing in order to waive counsel." (Dkt. 1, PageID.6). Not only is this false because Petitioner cross-examined witnesses that day, but because the court did not order a competency hearing (Dkt. 8-4); one had already been conducted (Dkt. 8-5). Petitioner's appointed counsel, who served as standby counsel on November 21, 2011 after the court granted Petitioner's request to represent himself, referred to the competency hearing to support the claim that Petitioner was competent to represent himself (Dkt. 8-3, PageID.162-163). Because the choice to represent oneself must be made voluntarily and intelligently, <u>Martinez</u>, 528 U.S. at 154, consideration of Petitioner's competence to represent himself was appropriate and required by law.

Prior to trial, Petitioner asked to be represented by counsel. <u>See</u> Dkt. 8-10, PageID.573-78. A defendant waives his right to self-representation by acquiescing to be represented by counsel. <u>See</u> <u>United States v. Jackson</u>, 304 F. App'x 424, 429 (6th Cir. 2008). By asking to be represented by counsel, Petitioner waived his right to self-representation at trial. Petitioner is not entitled to relief on his second claim.

11

### C. Newly discovered evidence/Fourth Amendment Violation

Petitioner contends he was arrested on traffic warrants, the arrest was illegal, and that evidence obtained as a result of this arrest should have been suppressed as fruit of the poisonous tree. Petitioner indicates that a statement was procured that should have been suppressed as fruit of the poisonous tree.

Habeas review of a petitioner's arrest or search by state police is barred so long as the state provides a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. Stone v. Powell, 428 U.S. 465, 494-495 (1976); Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must provide, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the Fourth Amendment claim must not have been frustrated by a failure of that mechanism. Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982). The sole relevant question is whether a habeas petitioner had an opportunity to litigate his claims, not whether he actually did so or even whether the Fourth Amendment claim was correctly decided. See Wynne v. Renico, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), rev'd on other grounds, 606 F.3d 867 (6th Cir. 2010). Under Stone, the correctness of a state court's conclusion involving a Fourth Amendment claim "is simply irrelevant." See Brown v. Berghuis, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the Stone v. Powell bar.'" Id. (quoting Gilmore v. Marks, 799 F.2d 51, 57 (3rd Cir. 1986)).

Petitioner claims that he was denied a full and fair opportunity to litigate his Fourth Amendment claim because the judge refused to conduct an evidentiary hearing on his Fourth Amendment claims when he raised them in his post-conviction motion.

The trial judge's failure to conduct an evidentiary hearing before denying Petitioner's post-conviction motion to suppress does not mean that Petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claims. See Good v. Berghuis, 729 F.3d 636, 638-640 (6th Cir. 2013). The Sixth Circuit in Good observed that "[t]he Powell 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." Id. at 639.

The Sixth Circuit in Good provided several reasons for its rationale. First, the holding in Stone v. Powell looked at "the opportunity for fair consideration presented by the state courts, not the procedure used in a given case to address the specific argument of a given defendant." Good, 729 F.3d at 639 (emphasis in the original). Moreover, "[I]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." Id.

Second, the Sixth Circuit opined that "this approach accords with traditional federalism and comity principles—considerations that animated Stone v. Powell in the first instance and considerations that take center stage whenever evaluating the scope of federal habeas corpus review." Good, 729 F.3d 639. Thus, "it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented." Id.

Third, the Sixth Circuit noted that it would be "impractical" for a federal court in a habeas case to review the procedures used to adjudicate a motion to suppress in state court in that it "would raise more questions than answers." Good, 729 F.3d at 639. The Sixth Circuit observed that: "[I]t is not feasible to prescribe a uniform set of procedures for every suppression dispute." Id., at 639-40.

Finally, and most importantly, the Sixth Circuit noted:

> Fourth, a contrary approach would collapse the hearing inquiry into the merits inquiry. The right to a hearing would turn on how strong the underlying exclusionary claim was, prompting an inquiry of the sort <u>Stone v. Powell</u> prohibited in order to determine whether <u>Stone v. Powell</u> applied. Our approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?

<u>Good v. Berghuis</u>, 729 F.3d at 640.

Petitioner presented his Fourth Amendment claims in his post-conviction motion for relief from judgment before the trial court and the Michigan appellate courts. Because Petitioner was able to raise his illegal arrest claim in his post-conviction motion, petitioner had a full and fair opportunity to raise this Fourth Amendment claim in the state courts and is thus not entitled to habeas relief. <u>See</u> <u>Hurick v. Woods</u>, 672 F. App'x 520, 535 (6th Cir. 2016). Petitioner is not entitled to relief on his third claim.

**D.  The ineffective assistance of counsel claims**

Petitioner asserts that there were a number of errors during the pre-trial proceedings and that trial counsel failed to impeach the witnesses and object to remarks made by the prosecution during closing argument.

A defendant must satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. <u>Id</u>. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. <u>Strickland</u>, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced

his defense. Id. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

Petitioner alleges that trial counsel failed to impeach the identification evidence provided by Ms. Sutton, who testified that she did not see a dangerous weapon or a larceny take place from her person. Petitioner references Exhibit # 1 (Dkt. 1, Page.ID.52). The identification given by Ms. Sutton has been discussed already in this Opinion.

Ms. Sutton testified that she was working at the Burger King on the date of the robbery and looked at Petitioner's face on three occasions and viewed him four times. On one of the occasions, she was reentering the store following break. Sutton and Petitioner entered the Burger King together, Sutton through one door and Petitioner through the other. She later heard her manager scream, "please don't shoot me," and hurried to the drive-through window to lock it, because there was another cash register located in the back. At that point, she saw a man with a striped shirt that looked like the man that she had seen earlier. He was running and trying to hold up his pants. The man met another man out back, and the two men laughed as they ran off. (Dkt. 8-11, PageId.763-768).

Two days later the police came to her house with a photo array. She could not identify Petitioner immediately, but called the police back after they left. She was sure that the person

who robbed the Burger King was Petitioner, who was number 5 in the photo array. (Dkt. 8-11, PageId.769-771).

Trial counsel cross-examined Ms. Sutton as to her statement that she saw "stripes at 7:00 and about three other occasions prior in time to the robbery." Counsel pointed out that this testimony was nowhere in her written statement. The witness agreed that this information was "pretty important," and it was not mentioned at any time before her testimony that day at Petitioner's trial. Trial counsel brought out that Sutton read her statement three times and never told the officer-in-charge, or anybody about this information before giving testimony at Petitioner's trial. (DKT. 8-11, PageID.782-783). Trial counsel also cross-examined Sutton as to her identification:

> Q Okay. When you view the live lineup, the only person that is the same from the photo array to the live lineup is my client, correct?
> A Correct.

(DKT. 8-11, PageID.787)

The prosecutor on re-direct attempted to rehabilitate the witness. Ms. Sutton testified that the officer must have left the information out and she remembered telling him about the four encounters with Petitioner.

Defense counsel skillfully impeached this witness' testimony as follows:

> Q But you read the statement three or four times, right?
> A Correct.
> Q So you knew it wasn't in there, right?
> A Correct.
> Q Didn't bother to tell anybody?
> A I wasn't looking for it.
> Q: You read it. Didn't bother telling anybody?
> A Correct.

(DKT. 8-11, PageID.792).

Petitioner was not denied the effective assistance of trial counsel in connection with Ms. Sutton. Counsel thoroughly questioned Ms. Sutton and impeached her trial testimony.

Petitioner next alleges that Ms. Rashida Richardson made her first in-court identification after three months of in-court proceedings and that the trial court was obligated to hold an evidentiary hearing (Wade Hearing) prior to the admission of her testimony. Petitioner further alleges that trial counsel was ineffective by failing to impeach Ms. Richardson when she testified that she identified Petitioner at a live lineup. Petitioner submits that Ms. Richardson testified that she identified Petitioner at a live lineup (Dkt. 8-4, PageID.178), but later testified at trial that she did not attend the live lineup (Dkt. 8-11, PageID.749).

A review of the record reflects that Richardson testified at the preliminary examination and at trial that she did not attend a live lineup, contrary to Petitioner's assertion. (See Dkt. 8-4, PageID.178). Although Petitioner alleges additional inconsistencies in Richardson's trial testimony, the record reflects that Richardson clearly identified Petitioner as the individual who pulled a gun on her. (Dkt. 8-4, PageID.169). Petitioner represented himself during the preliminary examination and cross-examined Ms. Richardson. The record does not reflect that she testified at the preliminary examination that she attended a live lineup. Furthermore, trial counsel cannot be said to be ineffective by failing to impeach Richardson's preliminary examination testimony when Petitioner represented himself at the preliminary examination. A criminal defendant who "has waived his right to counsel . . . cannot complain about the quality of his own defense by arguing that it amounted to ineffective assistance of counsel." United States v. Smith, 907 F.2d 42, 45 (6th Cir. 1990).

At trial, defense counsel also thoroughly cross-examined Richardson, in particular on her identification testimony about Petitioner, focusing on her failure to pick him out of a photo array (Dkt. 8-11, PageID.748-749).

Petitioner claims that the prosecutor improperly argued that the witnesses saw the armed robbery take place. The prosecutor asked Ms. Tiffany Reed if she could see the armed robbery taking place. Ms. Reed testified that she was at a vantage point where she could see part of the armed robbery when it took place and saw him from a side view (Dkt. 8-12, PageID.886-887). Reed also testified that she could not see a weapon (Dkt. 8-11, PageID.801). Petitioner submits that Reed could not testify "one way or the other" if she saw the larceny (Dkt. 1, PageID.43). He further contends that neither Sutton nor Reed witnessed the offense of armed robbery. As a result, Petitioner submits that it was improper for the prosecutor to argue that Sutton, Reed, and Richardson were witnesses to the armed robbery.

Petitioner raised an issue in his post-conviction 6.500 motion and in his habeas petition that trial counsel was ineffective by failing to object to the prosecutor's remarks during closing argument and the in the characterization of the witnesses' testimony.

To show prejudice under <u>Strickland</u> for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. <u>Hinkle v. Randle</u>, 271 F.3d 239, 245 (6th Cir. 2001).

Petitioner alleges the remarks made by the prosecutor in connection with the witness testimony and in closing argument were improper because the witnesses did not observe all of the elements necessary to prove armed robbery. The Court has already addressed herein, that such a requirement is not mandated under applicable Michigan or federal law. Because the Court has

already determined that the prosecutor's questions and remarks did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to the remarks.  Slagle v. Bagley, 457 F.3d 501, 528 (6th Cir. 2006).  In other words, Petitioner's counsel did not fail him by failing to make a losing argument.  Furthermore, any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Dkt. 8-12, PageID.923).  See Hamblin v. Mitchell, 354 F.3d 482, 495 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on this claim.

### E.  Claim # 5. The Invalid Sentencing Claim

Petitioner claims that the trial court incorrectly scored his guidelines by considering his juvenile history and with respect to PRV 7, of the Michigan Sentencing Guidelines, which should have been scored at zero.

State courts are the final arbiters of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or was wholly unauthorized by law. See Vliet v. Renico, 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence imposed within the statutory limits is not generally subject to habeas review.  Townsend v. Burke, 334 U.S. 736, 741 (1948); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim.  See Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007); Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003).  Petitioner had "no

state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, [P]etitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." Doyle v. Scutt, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. Id. Petitioner's claim that the state trial court improperly scored his sentencing guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of Petitioner's federal due process rights. Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000).

Petitioner alleges that the trial court judge added two years onto his 15 sentencing guideline minimum sentence. The sentence for felony-firearm in Michigan is a mandatory two-year prison sentence that must be served consecutively to any underlying felony. See M.C.L.A. 750.227b. The two-year consecutive sentence for the felony-firearm conviction was valid. Petitioner is not entitled to habeas relief on his fifth claim.

**F. The request for an evidentiary hearing.**

Petitioner requested an evidentiary hearing on his claims.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. See Stanford v. Parker, 266 F.3d 442, 459-60 (6th Cir. 2001). In light of the fact that Petitioner's claims are meritless, he is not entitled to an evidentiary hearing.

**G. The motions for summary judgment.**

Petitioner filed two motions for summary judgment. Given this Court's determination that Petitioner is not entitled to federal habeas relief, the motions for summary judgment are denied as moot. See Ortiz v. Williams, 489 F. Supp. 2d 381, 386 (D. Del. 2007).

**H. The Notice Re: Warning Persistent Failure to Perform Judicial Duties**

Petitioner filed a notice regarding this Court's alleged failure to promptly adjudicate his petition. Petitioner's notice is now moot in light of the fact that his petition has been adjudicated.

## IV. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the

standard for certificates of appealability. <u>Foster v. Ludwick</u>, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing <u>United States v. Youngblood</u>, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if Petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. <u>Id</u>. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. <u>Foster</u>, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed <u>in forma pauperis</u> on appeal. <u>Id</u>.

In sum, Petitioner's writ of habeas corpus, request for an evidentiary hearing, and certificate of appealability are denied. Petitioner's motions for summary judgment (Dkts. 21, 22) and "Notice Re: Warning Persistent Failure to Perform Judicial Duties" (DKT. 24) are denied as moot. Petitioner is granted leave to appeal <u>in forma pauperis</u>.

SO ORDERED.

Dated:  December 27, 2019                    s/Mark A. Goldsmith
      Detroit, Michigan                         MARK A. GOLDSMITH
                                          United States District Judge

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2019.

s/Karri Sandusky
Case Manager